Carolina **VASQUEZ, et al.,**
**Plaintiffs–Appellants,**

v.

**ALTO BONITO GRAVEL PLANT**
**CORPORATION and Caterpillar,**
**Inc., Defendants–Appellees.**

No. 92–7678.

United States Court of Appeals,
Fifth Circuit.

July 3, 1995.

Luther T. Munford, Angela M. McLain, Phelps, Dunbar, Jackson, MS, Tony Martinez, Brownsville, TX, Kathryn Snapka, Corpus Christi, TX, A.A. Munoz, II, David Hockemen, Munoz, Hockeman & Reed, McAllen, TX, for Vasquez and Aida Mae Vasquez.

JoAnn Storey, Maxine Haney, Legal Asst. Womble & Spain, Houston, TX, for Caterpillar, Inc.

William L. Hubbard, Roy S. Dale, Katie Pearson Klein, McAllen, TX, for Alto Bonito.

Before VAN GRAAFEILAND,* JOLLY and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This wrongful death case requires us to determine whether a case becomes removable from a Texas state court under our diversity jurisdiction once the plaintiffs and the nondiverse defendant negotiate a settlement. Applying Texas law, we hold that it does not become removable and that the district court should have remanded this case to state court because, although the nondiverse defendant and the plaintiffs may have negotiated an agreement to settle, the settlement had not become irrevocable under Texas law. Absent such an irrevocable settlement, the nondiverse defendant remained a party to the case. As a consequence, complete diversity of citizenship was lacking at the time of removal and the district court was without subject matter jurisdiction. Accordingly, we vacate the judgment of the district court and remand with instructions to remand this case to the state court.

I

This case arises from the death of Efren Vasquez. Vasquez, a truck driver, was killed on March 26, 1986, on the premises of Alto Bonito Gravel Plant Corporation ("Alto Bonito"); he had been using their front-end loader to load his truck with gravel and sand when the loader ran over him, crushing his chest. The loader was manufactured by Caterpillar, Inc. ("Caterpillar"). Invoking Texas's wrongful death statute, Vasquez's estate, widow, adult children, minor child, and parents (collectively, the "Vasquezes") sued Alto Bonito and Caterpillar in Texas state court. By leave of court, Alto Bonito filed a third-party indemnity complaint against Caterpillar.

On April 15, 1988, exactly a year from the date the suit was filed, and ten days before trial, Caterpillar filed a notice of removal pursuant to 28 U.S.C. § 1446(b). This statute permits a diverse defendant to file a notice of removal "within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." Pointing to responses it had received twenty-five days earlier to interrogatories propounded to fellow defendant Alto Bonito, Caterpillar stated in its notice of removal that all of the Vasquezes' claims against Alto Bonito "had been settled."[1] As

---

* Circuit Judge of the Second Circuit, sitting by designation.

1. Because the parties do not contest the issue, we assume without deciding that the responses to the interrogatories upon which Caterpillar based

a result of the settlement, Caterpillar asserted, it was the sole remaining defendant, and, furthermore, because it is diverse from the Vasquezes and the amount in controversy exceeds the jurisdictional threshold, it was entitled under § 1446(b) to remove the case to federal court under our diversity jurisdiction.

The Vasquezes moved to remand the case to state court, asserting that the district court was without jurisdiction because both

they and Alto Bonito are citizens of Texas. They stated that "there is still a bona fide dispute with" Alto Bonito "despite a partial settlement agreement between the defendants and the plaintiffs." In a supplemental motion, the Vasquezes stated that "there has been no settlement of any claims between the plaintiffs and defendant Alto Bonito."

After a hearing on the Vasquezes' motion to remand, the district court authorized thirty days of discovery to determine whether

its notice of removal constitute "other paper" under § 1446(b). The responses read, in relevant part, as follows:

INTERROGATORY NO. [1]: Has any settlement of any kind been made by or on behalf of [Alto Bonito] with anyone with regard to the accident in question in this lawsuit?

ANSWER: Please refer to Answer to Interrogatory No. [3].

INTERROGATORY NO. [2]: If any settlement has been made with anyone, please answer each of the following questions:

(a) Identify each person and/or business organization with whom any settlement has been made, and include in the identification the name, address, telephone number and employer of each organization.

ANSWER: Please refer to Answer to Interrogatory No. [3].

(b) Describe completely and in detail all terms, conditions and effects of each settlement.

ANSWER: Please refer to Answer to Interrogatory No. [3].

INTERROGATORY NO. [3]: Other than any settlement asked about in interrogatories Nos. [1] and [2], has there been any agreement, any understanding, or any discussions under the terms of which anyone has received or may expect to receive any advantage or other benefit of any kind, or may expect to avoid or minimize the risk of any potential disadvantage, loss, liability, or other detriment of any kind, with regard to any matter related in any manner to this lawsuit?

ANSWER: An agreement to settle has been entered into between Alto Bonito and a) Parents of decedent ... b) the rest of the Plaintiffs ... c) the workman's compensation carrier which has a lien concerning the benefits paid to decedent's widow.

INTERROGATORY NO. [4]: If there has been any agreement, any understanding, or any discussion concerning any matter asked about in Interrogatory No. [3], please answer each of the following questions:

(a) Identify each person and/or business organization with whom any agreement, any understanding, or any discussion has occurred, and include in the identification the name, address, telephone number, and employer of each person and or business organization.

ANSWER: Parents of decedent will receive SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS; the rest of the Plaintiffs will receive TWO HUNDRED THOUSAND ($200,-000.00) DOLLARS; and State Farm Fire and Casualty Company will receive approximately ELEVEN THOUSAND ($11,000.00) DOLLARS.

(b) Describe completely and in detail all terms, conditions and effects of each agreement, understanding, or discussion, and include in the description the identity of each person and or business organization who may be affected in any manner by each agreement, understanding or discussion ...

ANSWER: See Answer to Interrogatory No. [4]a.

(c) Describe completely and in detail each advantage or benefit which may be derived from each agreement, understanding, or discussion.

ANSWER: See Answer to Interrogatory No. [4]a.

(d) Describe completely and in detail each risk of any potential disadvantage, loss, liability, or other detriment which may be avoided or minimized by each agreement, understanding, or discussion.

ANSWER: See Answer to Interrogatory No. [4]a.

We should also observe that the record contains responses by the Vasquezes to identical interrogatories propounded to them by Caterpillar. Those responses are as follows: To Interrogatory [1], the Vasquezes responded "No." To Interrogatory [2], the Vasquezes responded "Because our answer to Interrogatory No. [1] is no, this Interrogatory No. [2] is not applicable." Finally, to Interrogatories [3] and [4], the Vasquezes objected on the ground that the attorney work product privilege protected the requested information from disclosure. These responses apparently were a part of the state court record at the time Caterpillar filed its petition for removal. Although these responses were not included in Caterpillar's petition for removal or in any pleading by any party, they are a part of the record on appeal because they were among the trial exhibits.

there was a settlement. Then, after discovery was complete, the court denied the motion to remand and entered an order stating that "[s]everal facts, in combination, lead the Court to believe that Plaintiffs had settled with Alto Bonito." In support of that determination, the court referred specifically to statements by Alto Bonito's counsel that he believed there was a settlement, and that he had discontinued activity in this case without objection or comment by the Vasquezes. In addition, the court referred to Alto Bonito's earlier answers to the interrogatories "stat[ing] that Plaintiffs had settled their lawsuit with Alto' Bonito";. and the Vasquezes' failure to "contest or object to th[ese] answer[s] until *after* Caterpillar filed its petition for removal and Plaintiffs apparently realized the effect of the settlement agreement on this court's jurisdiction." (Emphasis by the district court). Finally, the court stated, "Plaintiffs have been inconsistent in first alleging there was a partial settlement and later alleging that there was no settlement," and that "[t]his inconsistency impeaches Plaintiffs' evidence and argument." As a consequence, the district court found, "Plaintiffs finally and voluntarily settled their lawsuit with Alto Bonito."

Alto Bonito later obtained stipulated dismissals from all of the Vasquezes except Vasquez's widow and minor child. The district court then granted Alto Bonito's motion that was captioned "Motion for Summary Judgment, Motion to enforce Settlement Agreement or in the Alternative, Motion for Equitable Relief" as to all the Vasquezes, including the widow and minor child. The court never ruled on Alto Bonito's cross-claim against Caterpillar, however, or formally dismissed it from the suit. The remainder of the suit was tried to a jury in August 1992, which returned a take-nothing verdict.[2] This appeal followed.

2. The verdict apportioned fault for Vasquez's death twenty percent to Vasquez and eighty percent to Alto Bonito. Caterpillar was held blameless.

3. Because a settlement agreement necessarily would entail a voluntary act of the plaintiff, we

## II

The issue in this case is whether the district court erred when it ruled that this case was properly removable under diversity jurisdiction. The question is simply whether, at the time of removal, the plaintiffs effectively "ha[d] taken the resident defendant out of the case, so as to leave a controversy wholly between the plaintiff[s] and the nonresident defendant." *American Car & Foundry Co. v. Kettelhake,* 236 U.S. 311, 316, 35 S.Ct. 355, 356, 59 L.Ed. 594 (1915).[3]

### A

As an initial matter, Caterpillar differs with both Alto Bonito and the Vasquezes over the applicable standard of review. Caterpillar urges that, because the district court's denial of the Vasquezes' motion to remand rested upon certain findings of fact, we are bound to affirm the district court's decision absent clear error. Our cases flatly reject Caterpillar's position, however: "Because removal is an issue of statutory construction, we review a district court's determination of the propriety of removal *de novo.*" *Leffall v. Dallas Ind. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994). We impose upon the removing defendant—here, Caterpillar—the burden of establishing the existence of subject matter jurisdiction. *Jernigan v. Ashland Oil Co.,* 989 F.2d 812, 815 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). Accordingly, unless Caterpillar can show that at the time it filed its notice of removal, Alto Bonito effectively was no longer a party to the suit and the only controversy remaining was wholly between it and the Vasquezes, we must conclude that the district court erred in denying the Vasquezes' motion to remand, and vacate its judgment.

### B

Passing to the merits, Caterpillar concedes that, but for the settlement between Alto

assume that the "voluntary-involuntary" rule that applies to the removal of cases under § 1446(b) is not at issue in this appeal. *See Weems v. Louis Dreyfus Corp.,* 380 F.2d 545 (5th Cir.1967).

Bonito and the Vasquezes, this case would not be removable. Although the record is not transparently clear on this point, we will assume that the Vasquezes and Alto Bonito had negotiated some sort of settlement agreement.[4]

### (1)

■ To the extent that the parties so urge, we reject the proposition that federal law determines when a state court settlement agreement is final for purposes of determining removal jurisdiction. Although the core inquiry—whether federal subject matter jurisdiction exists—is quintessentially an issue of federal law, we look to state law to determine whether the nondiverse defendant is no longer effectively a party to the case. *E.g.*, *Weems*, 380 F.2d at 548 (reasoning that the dismissal via directed verdict of the nonresident defendant did not finally eliminate him from the case because the dismissal was appealable in the state courts). To the extent that Caterpillar argues that Texas law on settlements is irrelevant and a case becomes removable upon any voluntary act by the plaintiff that is evidence of an intent to abandon its lawsuit against the nondiverse defendant, we reject its position. Similarly, we reject the Vasquezes' argument that, as a matter of federal law, a formal and final dismissal under state law is required; instead, it is clear that a case may be removed based on *any* voluntary act of the plaintiff that effectively eliminates the nondiverse defendant from the case. *Id.* at 547. In this case, plainly, the question whether the settlement agreement has effectively removed Alto Bonito from the case requires us to examine the enforceability of the settlement agreement, which is governed by Texas law. *Val-*

*ley Ranch Dev. Co. v. F.D.I.C.*, 960 F.2d 550, 553 (5th Cir.1992).

### (2)

■ For at least two independent reasons, it is very clear to us that Caterpillar has failed to demonstrate that the case was removable when it filed its notice of removal. First, the purported agreement does not comply with the minimum requirements set forth in the Texas court rule that governs the enforceability of settlement agreements. In general, Texas courts will refuse to enforce settlement agreements unless they are (1) in writing, signed, and made part of the record; or (2) made in open court and entered of record. Tex.R.Civ.P. 11; *Kennedy v. Hyde*, 682 S.W.2d 525, 528–29 (Tex.1984). Neither of these requirements had been satisfied at the time Caterpillar filed its notice of removal; we cannot conclude, therefore, that a Texas court would enforce the agreement and dismiss Alto Bonito as a party.

■ Second, it is well-settled that in Texas, a party to a settlement agreement may unilaterally revoke it until such time as the court has rendered judgment on the agreement. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex.1983). In a decision rendered after this case was submitted, the Texas Supreme Court confirmed that this rule applies literally, holding that a party could revoke a settlement agreement *even after it was approved by a Texas court* because the court had not actually rendered judgment on the agreement. *S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995). A Texas state court renders judgment by officially announcing its decision in open court or filing a written order with the clerk. *Id.* In this case, the state court had done neither when Caterpillar filed its notice

---

**4.** We should note that, after a careful review of the record, we doubt that Alto Bonito's responses to the interrogatories, which provided the basis for Caterpillar's notice of removal, contain any evidence of a settlement. As set forth in footnote 1, the interrogatories distinguish between settlement and an agreement to settle, with Interrogatory [1] asking whether "any settlement of any kind" has been made, and interrogatory [3] asking "other than any settlement asked about in interrogator[y] [1], has there been any *agreement,*

any *understanding,* or any *discussions* " of settlement. (Emphasis added). Alto Bonito responded to [1] by referring to its response to [3]. It therefore did not answer "yes" to the question whether it had made any kind of a settlement with the Vasquezes. Its response to [3] simply asserts that an *agreement* to settle "has been entered into," not that the Vasquezes had settled their claims against Alto Bonito. In sum, Alto Bonito's responses do not indicate that they had settled with the Vasquezes.

of removal.[5] As a consequence, at the time of removal, either the Vasquezes or Alto Bonito could have revoked the settlement agreement and proceeded to trial. Clearly, the agreement did not effectively remove Alto Bonito from the case; consequently, diversity of citizenship was lacking at the time Caterpillar filed its notice of removal.[6]

Caterpillar conceded at oral argument that if either party had revoked its consent to the agreement before Caterpillar filed its notice of removal, the case would not have been removable. Caterpillar argues, however, that this case was removable because neither party in fact had revoked the agreement. We cannot accept Caterpillar's argument. Whatever agreement existed between the Vasquezes and Alto Bonito was inchoate in the sense that the agreement was not legally binding and either party could have unilaterally revoked the agreement and proceeded to litigate its respective claims. In short, there was simply no agreement between the parties and on the record that had the effect of actually removing Alto Bonito as a party from the case. The controversy thus was not "wholly between the plaintiffs and the non-resident defendant," *Kettelhake,* and consequently not removable.

■ Finally, we should note that we are unpersuaded by Caterpillar's argument that this case presents a situation in which the Vasquezes should be estopped from opposing the purported settlement. *E.g., Dehnert v. Dehnert,* 705 S.W.2d 849 (Tex.App.—Beaumont 1986, no writ) (holding that, although the parties did not sign the settlement agreement, as Rule 11 requires, it "certainly complie[d] with the intent and spirit of Rule 11" and, furthermore, a party who took advantage of the agreement by receiving some property under it would be estopped from denouncing it). We have previously recognized the narrowness of this equitable exception to Texas's Rule 11, *Valley Ranch,* 960 F.2d at 553 n. 1, and this case does not fit within that exception. Moreover, to the extent we might harbor some doubt about the equities in this case, we are required to resolve those doubts in favor of nonremoval. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 548 (5th Cir.1981).

(3)

For the foregoing reasons, we find that the settlement agreement was not enforceable, and that, as a consequence, Alto Bonito remained in the suit. This case was not removable, therefore, when Caterpillar filed its notice of removal. Accordingly, the district court erred when it denied the Vasquezes' motion to remand.

III

■ We hold that a case that was not originally removable under our diversity jurisdiction because of the presence of a nondiverse defendant may be removed only after it is clear under applicable state law that the nondiverse defendant has been taken out of the case, leaving a controversy wholly between the plaintiff and the diverse defendant. In this case, because there was no irrevocable settlement agreement, Alto Bonito remained a party to this case; complete diversity was therefore lacking and the district court was without subject matter jurisdiction over this case. Accordingly, the judgment of the district court is VACATED and this case is REMANDED to the district court with instructions to remand the case to the 229th District Court of Starr County, Texas.

·VACATED and REMANDED.

---

**5.** This is not to say that the all purely formal or ministerial acts must be completed before a case can be removed. As *S & A Restaurant Corp.* makes clear, in Texas, rendering judgment is not a ministerial act.

**6.** We should note also our prior recognition that Texas requires court approval to compromise and settle a minor's claims. *St. John Stevedoring Co. v. Wilfred,* 818 F.2d 397, 400 (5th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 485, 486, 98 L.Ed.2d 484 (1987).