**Richard MARTINEAU, Plaintiff,**

v.

**ARCO CHEMICAL COMPANY and Lisa Sweeney, Defendants.**

No. Civ.A. H–98–1608.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 24, 1998.

Steven E. Petrou, Houston, TX, for Richard J. Martineau, plaintiff.

Anthony P. Rosenstein, Kathryn S. Vaughn, Mark G. Artlit, Baker & Botts, Houston, TX, for Arco Chemical Company.

George E. Bradford, Jr., Bradford, Koenig, Shepperd & Kerr, for Lisa Sweeney.

## *MEMORANDUM AND ORDER*

ATLAS, District Judge.

Pending before the Court is Plaintiff Richard Martineau's Motion for Remand, Attorney's Fees, Costs and Sanctions [Doc. # 4] ("Motion"). Having considered the Motion, subsequent briefing, all matters of record and the applicable authorities, the Court determines that Plaintiff's Motion for Remand should be denied. This case was properly removed and the Court will retain jurisdiction.

## I. *FACTUAL BACKGROUND*

Plaintiff Richard Martineau ("Plaintiff") originally filed this lawsuit against his former employer, ARCO Chemical Company ("ARCO"), and a former co-worker, Lisa Sweeney ("Sweeney"), on June 11, 1997, in the 133rd Judicial District Court of Harris County, Texas, for issues related to his discharge from ARCO. Plaintiff Martineau is a citizen of Texas. Defendant ARCO is a corporation organized under the laws of the State of Delaware with a principal place of business in Pennsylvania, and is therefore a citizen of Delaware and Pennsylvania. Defendant Sweeney, like Plaintiff, is a citizen of Texas. Thus, the citizenship of Plaintiff was not completely diverse from that of Defendants at the time the lawsuit was filed.

Originally, Plaintiff claimed that ARCO discriminated against him because he is Canadian, in violation of the Texas Commission on Human Rights Act, TEX.LAB.CODE § 21.001, and that ARCO and Sweeney defamed and intentionally inflicted emotional distress on him.[1] In September 1997, Sweeney asserted a cross-claim against ARCO for full indemnity. Subsequently, ARCO asserted a similar cross-claim against Sweeney.

In May 1998, Plaintiff and Sweeney agreed to settle their dispute. On May 11, 1998, Sweeney's lawyer sent a letter to Plaintiff's lawyer, to "memorialize [their] settlement agreement." Letter, G. Bradford to S. Petrou, dated May 11, 1998 (Exhibit A–1 to Defendant ARCO Chemical Company's Response to Plaintiff's Motion for Remand, Attorney's Fees, Costs and Sanctions [Doc. # 5] ("Response")) ("May 11 Letter"). Sweeney promised to pay $15,000 to Plaintiff, return certain property "as is," sign an affidavit attached to the May 11 Letter, and write Plaintiff a letter of apology (in a form attached to the May 11 Letter). In exchange, Plaintiff promised to non-suit his claims against Sweeney. Both parties agreed to sign mutual releases. Plaintiff's lawyer signed and returned the letter, acknowledging Plaintiff's consent.

On May 19, 1998, Plaintiff's and Sweeney's lawyers filed a letter with the District Court advising the judge that they had "reached a settlement agreement in principle." *See* Letter, S. Petrou and G. Bradford to L. McCorkle, dated May 19, 1998 (Exhibit 4 to Motion) ("May 19 Letter"). The letter stated that "[o]nce the agreement is finalized and signed and the exchanges made, [Plaintiff] will file a motion to non-suit Ms. Sweeney with prejudice on or about *June 12, 1998 at the earli-*

---

1. Plaintiff later amended his petition to assert additional claims against Sweeney.

*est.*"[2] *See id.* (emphasis added). On May 22, 1998, Plaintiff's counsel filed the May 11 Letter with the state court pursuant to Tex. R.Civ.P. 11. ARCO's counsel learned of Plaintiff's filing that same day and immediately removed the case to this Court on the basis of diversity jurisdiction.

In its Notice of Removal [Doc. # 1] ("Notice"), ARCO claimed that because the settlement agreement had resolved all of Plaintiff's claims against Sweeney and had effectively taken Sweeney out of the case, this Court had original diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332. To the extent that Sweeney had not been formally dismissed, ARCO argued that Sweeney's continued joinder in the case was "improper and/or fraudulent" and therefore should not be considered in determining whether complete diversity of jurisdiction exists. *See* Notice, at 2. Sweeney neither joined in the removal petition nor gave ARCO permission to remove the case.

## II. *DISCUSSION*

Plaintiff moves for remand of this case to state court, claiming that ARCO wrongfully removed this case. ARCO, on the other hand, contends that removal of the case was entirely proper.

The party invoking this Court's removal jurisdiction bears the burden of establishing federal jurisdiction. *See Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921–22 (5th Cir.1997) (citation omitted). The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Id.* at 922 (citation

omitted). In determining the propriety of removal, this Court must evaluate all factual allegations in the light most favorable to Plaintiff, resolve all contested issues of fact in favor of Plaintiff, and resolve all ambiguities of controlling state law in favor of Plaintiff. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir.1995) (citations omitted).

### A. *Propriety of Removal on Diversity Grounds*

A case that is not originally removable under "diversity jurisdiction because of the presence of a nondiverse defendant may be removed only after it is clear under applicable state law that the nondiverse defendant has been taken out of the case, leaving a controversy wholly between the plaintiff and the diverse defendant." *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 694 (5th Cir.1995). Federal courts must look to state law to determine whether the nondiverse defendant is no longer effectively a party to the case. *See id.* at 693. "[A] case may be removed based on any voluntary act of the plaintiff that effectively eliminates the nondiverse defendant from the case." *Id.* at 693. The Fifth Circuit expressly has rejected the argument that "as a matter of federal law, a formal and final dismissal under state law is required." *See id.* Similar to the case at bar, *Vasquez* involved the effect of a state court settlement agreement on diversity of citizenship and, ultimately, removal. Despite its broad wording, however, the *Vasquez* court ultimately determined that removal was inappropriate under the specific circumstances before it. First, construing Texas law, the court was of the opinion that the purported agreement in that case did not

---

2. June 12, 1998 was one year and one day after the original suit was filed. The record indicates that Plaintiff's counsel may have engaged in behavior designed to thwart removal of this case. For example, Plaintiff informed the state court judge that he did not intend to non-suit Sweeney until June 12, 1998. This was the date on which ARCO would have been barred from removing this case to federal court. Also on June 12, Plaintiff's counsel contacted Sweeney's counsel and indicated that Plaintiff wished to perform the agreed actions that day. Sweeney was unavailable at that time. The record indicates, however, that Sweeney had attempted to deliver

certain property to Plaintiff's home as provided in the settlement agreement on May 30, but upon arrival, Plaintiff and his family would not accept delivery. These efforts weigh heavily against granting Plaintiff's Motion to Remand. *See Saunders v. Wire Rope Corp.*, 777 F.Supp. 1281, 1284 (E.D.Va.1991) ("Litigation is not intended to be a game of chess. Congress did not intend plaintiffs, through gimmicks and artful maneuvering used in connection with the one year bar to removal, to straightjacket or deprive nonresident defendants of their legitimate entitlements to removal.") (cited by ARCO).

satisfy Rule 11 of the Texas Rules of Civil Procedure.[3] Second, and more importantly, the Court's understanding of state law was that the settlement agreement between two of the parties did not "effectively remove" the nondiverse party from the case, because at the time of removal, either of the parties could have revoked the agreement and proceeded to trial. *See id.* at 693–94.

### 1. The Rule 11 Settlement Agreement

■ The parties' primary dispute involves whether the Rule 11 settlement agreement effectively removed Sweeney from this case and thereby resulted in complete diversity of citizenship between the remaining parties for the purposes of removal.

In the context of determining whether a settlement agreement effectively has removed a nondiverse defendant from a case, the Fifth Circuit examines the "enforceability of the settlement agreement, which is governed by Texas law." *Id.; see also Swindler v. Metropolitan Life Ins. Co.,* No. Civ.A. 96–2140, 1996 WL 384603 (E.D.La. July 9, 1996) (case become removable when nondiverse defendant taken wholly out of case; issue is "whether the settlement is enforceable under state law").

In Texas, the general rule historically was thought to be that a party may revoke consent to a settlement agreement at any time before judgment is rendered on the agreement. *See Vasquez,* 56 F.3d at 694; *S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 856 (Tex.1995); *Kennedy v. Hyde,* 682 S.W.2d 525, 528–30 (Tex.1984); *Quintero v.*

*Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983).[4] In *Padilla v. LaFrance,* 907 S.W.2d 454 (Tex.1995), however, the Texas Supreme Court refined this rule, noting that the cited cases all involved agreed judgments.[5]

In *Padilla,* the Texas Supreme Court distinguished between valid agreed judgments and enforceable settlement agreements. *See id.* at 461. The *Padilla* court held that "[a]lthough a court cannot render a valid agreed judgment consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement." *Padilla,* 907 S.W.2d at 461. Thus, lack of consent at the time the settlement agreement was filed with the Court did not render unenforceable the otherwise valid agreement filed in compliance with Rule 11.[6]

Plaintiff argues that removal in this case was improper because an irrevocable settlement agreement cannot be used to create diversity, citing *Vasquez.* To the contrary, Defendant ARCO argues, also from *Vasquez,* that if the May 11 Letter is an enforceable, irrevocable settlement agreement under Texas law, then removal was proper. Defendant also reasons that the settlement agreement between Sweeney and Plaintiff is clearly enforceable under *Padilla.* The Court concurs with ARCO.

In the case at bar, there has been no agreed judgment. At present, all that exists is the Rule 11 agreement on file with the

---

**3.** Rule 11 of the Texas Rules of Civil Procedure provides:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed, and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex.R.Civ.P. 11. Rule 11 "is a minimum requirement for enforcement of all agreements concerning pending suits." *Kennedy v. Hyde,* 682 S.W.2d at 528. "A settlement agreement must comply with Rule 11 to be enforceable." *Padilla,* 907 S.W.2d at 460.

**4.** *Vasquez* relied, in part, on *Quintero* and *S & A Restaurant Corp.* for the proposition that a party to a settlement agreement "may unilaterally re-

voke it until such time as the court has rendered judgment on the agreement." *Vasquez,* 56 F.3d at 693–94. The *Vasquez* court failed to note, however, that both cases referred to revoking consent to *agreed judgments. See S & A Restaurant Corp.,* 892 S.W.2d at 856; *Quintero,* 654 S.W.2d at 444.

**5.** The *Vasquez* court did not cite to *Padilla,* nor does it appear to have been aware of the opinion. *Vasquez* was decided, however, on July 3, 1995, and rehearing on *Padilla* was not overruled until October 5, 1995.

**6.** The *Padilla* court went on to hold that an action to enforce a settlement agreement where consent is withdrawn must be based on proper pleading and proof. *See id.* at 462.

state court, which contains the May 11 Letter and a more cursory letter dated May 19, 1998. It is undisputed that the May 11 Letter complies with Tex.R.Civ.P. 11. Additionally, Plaintiff has not indicated that he wishes to revoke consent to this agreement,[7] although Plaintiff appears to quibble with some of the details he claims are necessary to implementation of the settlement. Under any construction of *Padilla*, the settlement agreement in this case between Sweeney and Plaintiff is enforceable.[8] Therefore, under *Vasquez*, Plaintiff "effectively eliminated" Sweeney from the cases when he signed the Rule 11 agreement and filed it with the state court. *Vasquez*, 56 F.3d at 693. At that point, there was complete diversity of citizenship between Plaintiff and the party against whom Plaintiff continued to prosecute claims. Removal then was proper in this case.[9] Among the claims originally asserted by Plaintiff, the only controversies remaining in this case are those between Plaintiff and ARCO.

### 2. Additional Arguments

In addition to his primary argument that the Rule 11 settlement agreement was insufficient to effect complete diversity and support removal, Plaintiff makes a number of other arguments in his Motion for Remand and his supplement filed since oral argument on the motion. The Court will address each argument briefly.

First, Plaintiff contends that removal is fatally defective, because Sweeney did not join in removal or consent in writing to removal. Notice of removal, however, does not require the consent of co-defendants that were fraudulently joined to defeat diversity jurisdiction. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.1993). While, as Defendant notes, this case is more in the nature of "fraudulent retention" than "fraudulent joinder," the analogy is apt, and compels the Court to find that Sweeney's consent was not required for removal in this case.

To successfully prove that a non-diverse citizen has been fraudulently joined in order to defeat diversity jurisdiction, the removing party must demonstrate "'that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.'" *Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315, 319 (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 413, 139 L.Ed.2d 316 (1997). In this case, the Court has determined that Plaintiff effectively removed Sweeney from this litigation by signing and

---

**7.** Indeed, under *Padilla*, even if Plaintiff had revoked consent to the settlement agreement, such revocation would not render the settlement agreement unenforceable.

**8.** Plaintiff's argument that the agreement is not final because certain terms remain disputed and because various acts have yet to be performed is immaterial. Rather, the issue is whether the Rule 11 agreement is "enforceable," and whether the parties' are legally bound to perform the promises they exchanged. Texas law enforces parties mutual promises. *See, e.g., Taylor v. Bonilla*, 801 S.W.2d 553, 556 (Tex.App.—Austin 1990, writ denied) ("[M]utual obligations by parties to an agreement will furnish sufficient consideration to constitute a binding agreement."). Indeed, Plaintiff's own actions in seeking performance of the promises further indicates his view that the agreement is binding. The Court also rejects Plaintiff's argument that, because the parties allegedly differ over the details of some of the agreement's terms, the agreement is materially incomplete. The promises to perform the settlement are enforceable. Also immaterial is Plaintiff's argument that a more formalized document

eventually was to be executed by the parties. In *Padilla*, the court enforced a series of letters as a binding settlement agreement, notwithstanding the fact that a more formal settlement agreement was eventually drafted. *See Padilla*, 907 S.W.2d at 456–57. Finally, the Court rejects Plaintiff's argument that reading the May 11 and May 19 Letters in conjunction dictates a different result. While the May 19 Letter states that the parties have reached a settlement agreement "in principal [sic]," this in no way contradicts or overrides the effect of the signed May 11 Letter executed to "memorialize [the] settlement agreement." May 11 Letter. The May 19 Letter simply related to the Court that certain details remained to be finalized.

**9.** *See also Mancari v. AC & S Co.*, 683 F.Supp. 91, 93 (D.Del.1988) ("When a plaintiff voluntarily enters into a settlement with all nondiverse defendants leaving only a diverse defendant in the action, the plaintiff is deemed to have given up its right to choose the forum of the action. It is not required that dismissal of the nondiverse defendants be in writing or be formalized.") (citations omitted).

filing the settlement agreement in state court. It logically follows that, pursuant to the settlement agreement, Plaintiff will no longer be able to establish a cause of action against Sweeney.[10] Moreover, it appears from the record that Plaintiff may have engaged in collusive behavior by retaining Sweeney as a defendant in name only in order to defeat diversity until removal was no longer timely under federal law. These circumstances are sufficiently akin to fraudulent joinder to render consent by Sweeney unnecessary.

■ Second, as to Plaintiff's claim that diversity is improper because Sweeney has not been dismissed from the case, Plaintiff's argument is unavailing. *Vasquez* specifically holds that a formal and final dismissal under state law is not required. Instead, a case may be removed based on *"any* voluntary act of the plaintiff that effectively eliminates the nondiverse defendant from the case." *Vasquez,* 56 F.3d at 693 (emphasis added). As discussed, *supra,* the Rule 11 agreement signed by the parties'. counsel and filed with the state court "effectively eliminated" Sweeney from this litigation. Her formal dismissal is not required to perfect complete diversity.

■ Third, Plaintiff contends that removal is improper because Sweeney and ARCO have asserted cross-claims against each other. Because this Court has diversity subject-matter jurisdiction, over the primary claim asserted by Plaintiff against ARCO, the Court has ancillary jurisdiction over ARCO's and Sweeney's cross-claims. *See Zurn Indus., Inc. v. Acton Constr. Co.,* 847 F.2d 234, 236–37 (5th Cir.1988); 28 U.S.C. § 1367; *see also Mancari,* 683 F.Supp. at 93 .[11] Accordingly, the existence of cross-claims between Sweeney and ARCO is not fatal to removal.

Finally, Plaintiff's request that this Court use its equitable powers to remand the case must be denied. The Court has no basis for an "equitable" remand, either in law or fact. Notwithstanding that ARCO announced "ready for trial," until the statute of limitations ran, it was within ARCO's rights as a nonresident defendant to remove this case to federal court once Sweeney was removed from the case.[12] Plaintiff's further allegation that ARCO's lead counsel assured Plaintiff that ARCO would not remove the case to federal court appears to be equally baseless. At any rate, Plaintiff has not cited the Court to any authority indicating that it has discretion to order an "equitable remand." As Defendant rightly notes, removal is a question of this Court's subject-matter jurisdiction. Equity provides no authorization to remand this case.

### B. *Request for Sanctions, Attorney's Fees, Costs, and Discovery*

Because the Court concludes that this case was properly removed, Plaintiff's request for sanctions, attorney's fees, and costs all are unwarranted and are denied. The Court likewise denies Plaintiff's request for additional discovery to ascertain whether ARCO is funding the settlement negotiations between Plaintiff and Sweeney. There is no relevance to this inquiry.

### III. *CONCLUSION*

Based on the existence of a binding and enforceable settlement agreement signed and filed with the state court, this Court determines that Plaintiff "effectively removed" Sweeney from this litigation. Sweeney's elimination from the case rendered diversity complete between Plaintiff and the remain-

---

**10.** Plaintiff's and Sweeney's current differences regarding performance of certain aspects of the settlement agreement do not implicate the original causes of action Plaintiff once asserted against Sweeney. At any rate, any claim resulting from enforcement of the settlement agreement would be ancillary and not related to the original claims asserted against Sweeney. To the extent further litigation is necessary between Plaintiff and Sweeney regarding enforcement of the settlement agreement, the Court will sever and remand those claims. *See infra.*

**11.** In any event, diversity exists on the cross-claims because ARCO is a corporate citizen of Delaware and Pennsylvania, while Sweeney is a resident of Texas.

**12.** Although the trial date appeared imminent, the state court still had not decided ARCO's summary judgment motion.

ing defendant ARCO. This Court therefore has subject-matter jurisdiction, and removal was proper. The Court agrees with Defendant ARCO that "[t]he jurisdictional issues cannot, as a matter of policy or logic, depend on whether the plaintiff arbitrarily (or for reasons of his own) insists on keeping the settling, non-diverse defendant in the case as a party in name only, or whether the plaintiff insists on nit picking an enforceable settlement agreement." [13] Defendant's Post-Argument Supplemental Brief on Removal Jurisdiction, at 4–5. Accordingly, Plaintiff's Motion for Remand must be **DENIED.** It is therefore

**ORDERED** that Plaintiff Richard Martineau's Motion for Remand, Attorney's Fees, Costs and Sanctions [Doc. # 4] is **DENIED.** It is further

**ORDERED** that Defendants Sweeney and ARCO will report to the Court in writing as to whether any live controversies remain between them.[14]

---

**13.** Upon notification by any party that any legal disputes continue between Plaintiff and Sweeney concerning the details of the settlement agreement after 10 days of entry of this Order, the Court will remand those disputes to the state court.

**14.** Given the settlement of Plaintiff's claims against Sweeney, these claims would be more in the nature of third-party claims at this juncture.