**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-20092

ESTATE OF RICHARD J. MARTINEAU,

Plaintiff-Appellant,

VERSUS

ARCO CHEMICAL COMPANY; ET AL,

Defendants,

ARCO CHEMICAL COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

February 25, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

The Estate of Richard Martineau ("Martineau") appeals the grant of summary judgment in favor of ARCO Chemical Co. ("ARCO") in this discrimination and harassment case on several grounds. Martineau also contends that the district court failed to remand the case to the Texas state court. We affirm the district court's grant of summary judgment and its decision not to remand.

I.  FACTS

Martineau began working at ARCO in 1976, and by 1996 he served as a lab supervisor in ARCO's Pasadena, Texas, chemical plant. ARCO contends that in 1996 employees and supervisors complained about Martineau's behavior which included cursing, yelling, slamming doors, and creating an unpleasant work environment. Martineau's supervisor, Eric Kolodziej ("Kolodziej"), counseled him regarding this behavior, and ARCO arranged for Martineau to attend an interpersonal skills class.

ARCO claims that complaints continued regarding Martineau's behavior. In September 1996, Lisa Sweeney ("Sweeney") filed a harassment complaint with ARCO accusing Martineau of giving her sexually suggestive poems, attempting to continually contact her at home, and starring at her at work. In response to these complaints, ARCO transferred Martineau to a non-supervisory role and prohibited him from all non-work-related contact with Sweeney. However, Martineau continued to call Sweeney at home, including one call, which registered on Sweeney's caller identification at 11:48 p.m. She again complained to ARCO. Martineau gave excuses for the calls, and ARCO gave Martineau the benefit of the doubt. Nevertheless, he continued to call Sweeney and to visit her at work.

By late 1996, ARCO terminated Martineau for violating company policy and for violating ARCO's instructions not to contact Sweeney. When Martineau appealed his termination to ARCO, he did not claim he was fired because of his national origin; rather, he

accused ARCO of conspiring against him, and he accused the phone company of falsifying Sweeney's telephone records.

Martineau claims that ARCO employees continually discriminated against him because he is Canadian. Martineau suggests that in 1976 ARCO employees began making offensive comments regarding his national origin, including calling him "dumb Canadian" and "foreigner." Although he filed numerous complaints with ARCO, management ignored him. Martineau asserts the abuse became worse when Kolodziej became his supervisor. Kolodziej apparently demanded Martineau's green card and demanded to know why Martineau had not become a U.S. citizen even though he had been in the United States for 20 years. As for his relationship with Sweeney, Martineau contends that she viewed him as a father figure who gave her advice and provided loans to purchase a home. Sweeney then conned Martineau out of this money. When Martineau demanded reimbursement, Sweeney began to accuse him of harassment.

## II.  PROCEEDINGS AND REMOVAL

On June 11, 1997, Martineau sued ARCO and Sweeney in Texas state court. He claimed ARCO discriminated against him because of his Canadian national origin in violation of the Texas Commission on Human Rights Act ("TCHRA"). He also alleged that Sweeney and ARCO had defamed and intentionally inflicted emotional distress on him. Both Martineau and Sweeney are Texas citizens. ARCO is a Delaware Corporation with its principle place of business in Pennsylvania. Thus complete diversity of citizenship did not exist

3

when Martineau initially filed the action.

28 U.S.C. § 1446 allows a defendant to remove a case to federal court at any time, prior to the entry of judgment, when complete diversity is found to exist pursuant to 28 U.S.C. § 1332. 28 U.S.C. § 1446(b), however, limits the right of removal - a defendant cannot remove if more than a year has passed since the commencement of the action.

In May 1998, almost a year after Martineau's June 11, 1997 filing of the action, he and Sweeney agreed to settle their dispute. On May 11, 1998, Sweeney's counsel wrote Martineau's counsel indicating that the "letter will memorialize our settlement agreement" and instructing the attorney to sign and return the letter "if it meets with your client's approval." Martineau's attorney signed and returned the letter and filed it with the court on May 22, 1998. The letter listed specific terms of the agreement, such as the exchange of money and property, and suggested a manner and time of performance.

The May 11 letter provided that Martineau "will execute and file with the court a Non-suit with prejudice as to all of his claims" in reference to Sweeney. "In addition, Martineau will exchange executed full and final releases of any and all claims with Lisa Sweeney. This Non-suit with prejudice will be submitted to the court for the Judge's signature on June 12, 1998." Notably, June 12, 1998 was one year and one day after the original action was filed.

4

After the exchange and signature of the May 11 letter but before that letter was filed with the court, Martineau's and Sweeney's attorneys, on May 19, filed a different letter advising the court only that they had reached a settlement "in principle." The second letter specified that the "settlement is being reduced to writing for each party to review and sign." The letter also stated that "[o]nce the agreement is finalized and signed and the exchanges made, [Martineau] will file a motion to non-suit Ms. Sweeney with prejudice on or about June 12, 1998 at the earliest."

Three days later, on May 22, Martineau's counsel filed the May 11 letter with the court. Learning of the filing, ARCO immediately removed the case to federal district court. The district court determined that it had subject matter jurisdiction. ARCO then moved for summary judgment regarding Martineau's removed claims and his supplemental slander claims. The district court concluded that Martineau had failed to raise material fact issues concerning essential elements of each of his claims. In granting ARCO's summary judgment motion, the court concluded that (1) Martineau had not raised factual issues as to a prima facie case of discrimination; (2) his hostile environment claim was untimely; (3) his intentional infliction of emotional distress claim had not risen to a legally actionable level; and (4) he had raised no issues of material fact as to the slander and defamation claims.

## III. DISCUSSION

A. Removal

5

Martineau contends that because a legal settlement did not exist between him and Sweeney removal was improper because complete diversity did not exist among the parties. Martineau asks that we remand the case because we lack subject matter jurisdiction. We review a district court's determination of the propriety of removal de novo. We impose upon the removing defendant, ARCO, the burden of establishing the existence of subject matter jurisdiction. Vasquez v. Alto Bonito Gravel Plant Corp., 56 F.3d 689, 692 (5th Cir. 1995).

Federal courts must look to state law to determine whether removal is proper on the ground that the nondiverse defendant is no longer effectively a party to the case. A case may be removed based on any voluntary act of the plaintiff that eliminates that nondiverse defendant from the case. Id. at 693. We must determine (1) whether there was a binding settlement agreement between Martineau and Sweeney on May 22, the date of removal, and (2) what procedural safeguards must be taken in order for the agreement to be enforceable and to "effectively eliminate" the nondiverse defendant from the litigation.

Under Texas Rule of Civil Procedure 11, a settlement agreement will be enforceable only if it is (1) in writing, (2) signed, and (3) filed as part of the record. Tex. R. Civ. P. 11; Cherco Properties, Inc. v. Law, Snakard & Gambill, P.C., 985 S.W.2d 262, 265 (Tex. App. 1999). Texas case law further requires that, to be enforceable, a settlement agreement must include all material terms

6

- even if performance is to be completed later. <u>Padilla v. LaFrance</u>, 907 S.W.2d 454, 460 (Tex. 1995). Evidence of the parties' intent to enter into a binding agreement is also required. <u>Premier Oil Refining Co. v. Bates</u>, 367 S.W.2d 904, 907 (Tex. App. 1963).

The agreement between Sweeney and Martineau satisfies the three elements of Texas Rule 11: (1) There was a writing - in the form of two letters, one dated May 11 and the other dated May 19; (2) both letters were signed by counsel for both parties; and (3) both letters were filed with the court. The letters also contain all material terms. The May 11 letter specifically described the property Sweeney would return to Martineau; it mentioned and provided sample copies of the letter of apology and the affidavit she would provide; and specified the monetary settlement amount.

Martineau contends that these letters do not evidence the parties intent to be bound by the agreement because necessary conditions precedent had to occur before the agreement could become final. Martineau argues that the agreement could only become final when Sweeney provided the property and money to Martineau, and wrote the letter of apology. Because these acts did not occur within the one year period required by 28 U.S.C. § 1446(b), we should remand this case to the Texas state court.

We find these arguments unpersuasive. First, merely because an agreement contemplated future acts, such as the exchange of property and money, does not make the agreement unenforceable.

7

Under Texas law, full performance is not required for an agreement to be binding. <u>Cherco Properties, Inc.</u>, 985 S.W.2d at 266 (noting that time for performance is not a material term and its omission does not render the agreement unenforceable); <u>Padilla</u>, 907 S.W.2d at 460-61 (noting that alteration in mode of acceptance and uncertainty regarding one term did not render agreement unenforceable). In <u>Cherco</u>, a Texas Court of Appeals determined that the settlement agreement was binding even though the agreement contemplated even more future acts than the agreement in question here. <u>Cherco</u>, 985 S.W.2d at 264.

Second, we see no evidence suggesting that the the parties did not intend the May letters to be binding. Moreover, as a matter of public policy, if the writing is clear and unambiguous, the court should not look outside it. The purpose of the Texas Rule 11 writing requirement is to minimize disputes by allowing the court to ascertain the terms of the agreement without resorting to oral testimony. <u>Id</u>. at 265. Here the intent of the parties to be bound by the agreement is obvious. The May 11 letter states that it "memorialize[s] our settlement agreement" and that signature to the letter would signify agreement to its terms. In addition, the terms of the letter are specific, listing the particular items of personal property, identifying the monetary amount, and providing specimens of a letter of apology and an affidavit. The May 19 letter to the court, does not cast this intent in doubt, it only serves to inform the court of the parties intent to settle.

8

Even though we have determined that the parties completed all of the elements for a binding agreement, we must now determine whether the agreement is still revokable and thus non-binding absent a formal court order. In Vasquez, we determined that Texas law permitted either party to unilaterally revoke consent to a settlement agreement until the court has rendered judgment by officially announcing its decision in open court or filing a written order with the clerk. Vasquez, 56 F.3d at 693. Martineau does not argue that he revoked consent. Martineau claims that because the court did not render judgment within the one-year period required by Section 1446(b), the parties never reached a binding settlement agreement.

Texas law has changed on this question, and we are no longer bound by Vasquez. FDIC v. Abraham, 137 F.3d 264, 269 (5th Cir. 1998) (noting an exception to strict stare decisis rule for a subsequent state court decision which makes this court's decision clearly wrong). The Texas Supreme Court in Padilla, 907 S.W.2d at 460, decided a few months after Vasquez,[1] clarified that once a settlement agreement containing all material terms is written and signed both parties are bound by the agreement even if the court has not yet ruled on it. Therefore, we determine that the agreement is binding and enforceable.

---

[1] Padilla was decided on May 25, 1995, but the decision was not final until October 5, 1995, when rehearing was overruled. Vasquez was decided on July 3, 1995.

9

Finally we must ask whether the settlement agreement effectively eliminated Sweeney as a nondiverse defendant and permitted removal. Under Vasquez, "a case may be removed based on any voluntary act of the plaintiff that effectively eliminates the nondiverse defendant from the case." 56 F.3d at 693.

Martineau contends that he had no intention of abandoning the lawsuit against Sweeney until the parties completed performance and exchanged formal releases. However, we find it clear that the drafting, signing, and filing of letters regarding settlement were voluntary acts by Martineau. Moreover, even if he did not intend to abandon the lawsuit against Sweeney, it is not clear what further litigation Martineau could have prosecuted against Sweeney given the fact that they had a binding and enforceable settlement agreement. We hold that Martineau intended to abandon litigation against Sweeney, and he effectively eliminated the nondiverse defendant.

Martineau argues for the first time in rebuttal that we lack subject matter jurisdiction because Sweeney's and ARCO's cross-claims regarding indemnification destroy complete diversity. We note, however, that this court has diversity jurisdiction over Martineau's primary claim against ARCO, and we have ancillary jurisdiction over the cross-claims. Zurn Indus., Inc. v. Acton Constr. Co., Inc., 847 F.2d 234, 236-37 (5th Cir. 1988). We also have diversity jurisdiction over these cross-claims because ARCO is a corporate citizen of Delaware and Pennsylvania, while Sweeney is

10

a Texas citizen.  Finally, because we hold that the settlement agreement was enforceable and removal proper, we do not address ARCO's fraudulent retention theory.

B.  Summary Judgment

1. Standard of Review

Martineau contends that he has raised issues of material fact and the district court erred in granting ARCO's motion for summary judgment.  We review a grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the party opposing the motion.  See Hall v. Gillman, Inc., 81 F.3d 35, 36-37 (5th Cir. 1996).  Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

2. Discrimination Claim

Martineau sues ARCO for discrimination, based on national origin, under the TCHRA.  When applying the THCRA, we look to analogous federal law contained in 42 U.S.C. § 2000e ("Title VII").  Leatherwood v. Houston Post Co., 59 F.3d 533, 536 n.5 (5th Cir. 1995).  To make a prima facie claim of discrimination under Title VII, a plaintiff must be (1) a member of a protected class; (2) qualified for the position he held; (3) discharged from that position; and (4) replaced by a person who is not a member of that protected class.  If such a case is made, the defendant must

11

articulate a non-discriminatory reason for its actions. If this is done, the plaintiff must then prove (1) that the defendant's proffered reasons were false, and (2) that the real reason for his discharge was because he was a member of a protected class. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-8 (1993).

The district court held that Martineau made a prima facie case of discrimination. It also correctly held that ARCO established a legitimate, nondiscriminatory reason for Martineau's discharge, specifically that despite warnings, counseling and many second chances, Martineau continued to violate ARCO instructions regarding his relationship with Sweeney. Martineau has offered no evidence demonstrating fact questions concerning whether ARCO's proffered reasons for his termination were false. Martineau contends that ARCO discriminated against him and other employees, but he offers no evidence to dispute the fact that he was fired for no reason other than insubordination.

3. Hostile Work Environment Claim

Martineau argues that the district court erred in determining that his hostile work environment claim was untimely. Title VII (or, by inference, a TCHRA action) requires the plaintiff to file an EEOC charge within 180 days after the alleged discriminatory incident. 42 U.S.C. § 2000e-5(e)(1). As the district court noted, A Title VII hostile work environment claim may be based on claims that "could reasonably be expected to grow out of the initial charges of discrimination." Dollis v. Rubin, 77 F.3d 777, 781 (5th

12

Cir. 1995). Martineau cited his 1996 termination as falling within the 180-day period. The district court, however, correctly noted that his termination did not qualify as an act within the time period because the termination related to disparate treatment not harassing conduct.

Martineau claims that the district court erred because it failed to consider the hostile work environment as a continuing violation. We have noted that if the unlawful employment practice manifests itself over a period of time the plaintiff is then required to show a series of acts, one of which falls within the 300-day limitations period. Berry v. Board of Supervisors of L.S.U., 715 F.2d 971, 979 (5th Cir. 1983).

First, Martineau apparently failed to raise the continuing violation exception before the district court thereby waiving it on appeal. Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986) (noting that failure to assert a legal reason why summary judgment should not be granted is waived if later raised on appeal). In addition, the continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period. Berry, 715 F.2d at 981 (holding that the alleged acts must involve the same type of discrimination). Martineau still does not offer a valid connection between the acts suggesting a hostile work environment and his termination which dealt with disparate treatment.

4. Intentional Infliction of Emotional Distress

13

Martineau contends that the district court erred when concluding that Martineau had not alleged facts sufficient to sustain his summary judgment burden. In order to recover for intentional infliction of emotional distress under Texas law, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Hirras v. National R.R. Passenger Corp., 95 F.3d 396, 400 (5th Cir. 1996). Under Texas law ordinary employment disputes are not adequate for intentional infliction claims. Johnson v. Merrell Dow Pharmaceuticals, Inc., 965 F.2d 31, 33-34 (5th Cir. 1992). An employer's conduct rises to the level of extreme and outrageous conduct in only the most unusual cases. Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 654 (5th Cir. 1994).

The district court determined that Martineau's allegations did not rise to such extreme conduct, and Martineau provides no evidence that ARCO's conduct was extreme and outrageous. In addition, intentional infliction of emotional distress claims are not covered by the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.021, and, therefore, the claim does not survive Martineau's death. Plumley v. Landmark Chevrolet, Inc., 122 F.3d 308, 311 (5th Cir. 1997).

4. Defamation and Slander Claims

First Martineau contends that his supervisor, Kolodziej,

14

defamed him on four occasions. Martineau alleges that (1) Kolodziej said that Martineau had "overreacted" to his performance evaluation; (2) Kolodziej denied asking to see Martineau's green card; (3) Kolodziej told Martineau that he was fired for sexual harassment; and (4) Kolodziej said that Martineau was "insane, delusional and irrational." For the reasons discussed by the district court, we hold that these allegations do not raise issues of material fact to support these defamation claims. Absent these underlying issues of material fact, Martineau is legally unable to show that ARCO should be held liable for ratifying these statements by Kolodziej.

Martineau also asserts that Kolodziej's statements to another ARCO employee that Martineau was "insane, delusional and irrational" amounted to slander per se. As the district court noted, "[s]tatements are slanderous per se if they are so obviously harmful to the person harmed that no proof of their injurious effect is necessary to make them actionable. Matters characterized as slanderous per se are statements that affect a person injuriously in his office, profession, or occupation." Simmons v. Ware, 920 S.W.2d 438, 451 (Tex. App. 1996). We conclude that none of the alleged statements fall within the category of per se slander.

In the alternative, Martineau contends that ARCO is liable under a theory of self-defamation because he had to repeat Kolodziej's defamatory statements to prospective employers which

15

caused further injury. Martineau's self-defamation theory fails for two reasons. First, the record is unclear as to whether Martineau actually mentioned these statements to potential employers.

Second, Martineau's legal reasoning is unsound. Although the Texas Supreme Court has never adopted this theory, Martineau cites two intermediate Texas appellate courts which held that an employer may be liable for the employee's own publication of the employer's defamatory statements under certain circumstances. First Bank of Corpus Christi v. Ake, 606 S.W.2d 696, 701 (Tex. Civ. App. 1980); Chasewood Constr. Co. v. Rico, 696 S.W.2d 439, 446 (Tex. App. 1985). Both cases rely comment m on Section 577 of the Restatement (Second) of Torts. The Restatement requires the defamed person to show that when he published the remark, (1) he was unaware of the defamatory nature of the statement, and (2) circumstances indicated that the communication to the third party would be likely.

Martineau contends that the district court erred in finding he had not shown a lack of awareness of the defamatory statements because neither Ake nor Rico relied on the first Restatement requirement. Nevertheless the district court correctly notes that the first requirement is essential because otherwise "the defamed party is under no duty to mitigate its damages by refraining to self-publish known defamatory statements." Doe v. Smithkline Beecham Corp., 855 S.W.2d 248, 259 (Tex. App. 1993), aff'd as modified on other grounds, 903 S.W.2d 347, 356 (Tex. 1995).

16

For these reasons, we affirm.

AFFIRMED.