Revised February 9, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-30795

_____

BRENDA SMITH,

      Plaintiff-Appellee-Cross Appellant,

VERSUS

THE BERRY CO., ET AL,

      Defendants,

L. M. BERRY AND COMPANY,

      Defendant-Appellant-Cross-Appelee.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____
February 1, 1999

Before REAVLEY, DAVIS, and DUHÉ, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant L.M. Berry & Company ("Berry") challenges the district court's judgment, entered on a jury verdict, awarding damages because Berry discriminated against the Plaintiff, Brenda Smith, on the basis of her sex and her age. Berry argues that Smith produced insufficient evidence of discrimination for the case to have gone to the jury and thus the district court should have granted Berry's motion for judgment as a matter of law. In addition, Berry challenges several of the damage awards. Alternatively, Berry seeks a new trial because of various trial

errors. Smith cross-appeals, challenging the district court's denial of front pay and its decision not to award the maximum punitive damages permitted under Title VII. We affirm in part and reverse in part.

## I. Facts and Prior Proceedings

The important facts of this case, when viewed in the light most favorable to the verdict, are as follows. Berry, a subsidiary of BellSouth, sells advertisements for the Yellow Pages. From 1983 through February 1996, Plaintiff Brenda Smith was a salesperson for Berry. During her first eleven years with Berry, she was very productive and enjoyed an excellent relationship with her coworkers and superiors. However, from 1994 through the end of her employment in February 1996, Smith's relationship with Berry deteriorated, eventually leading to Smith's resignation--or, as she claims, her constructive discharge. Smith filed this suit against Berry alleging that the demise of her successful career was caused by Berry's age and sex discrimination. In response, Berry argued that Smith's attitude and negative reaction to the restructuring of Berry's salary system were the cause of her problems, not her age or her sex.

Brenda Smith began working for Berry in November 1983. In August 1990, Smith was promoted to Account Manager.[1] While in this new position, Smith was one of Berry's leading salespersons and won numerous awards for her work. At trial, Smith testified that when

---

[1] The title "Account Manager" was subsequently renamed "Senior Account Manager," and then "Sales Leader."

2

she was promoted in 1990, Dale Granda, her manager at that time, stated that he "really had some concerns whether or not a woman could handle the job because it was a lot of stress and a lot of responsibility." Despite this remark, Smith concedes that Granda promoted her twice and recommended her for BellSouth's highest achievement award.

In 1994, shortly after her fortieth birthday, Smith was suspended for one day for mishandling an account. Both then and at trial, Smith challenged the grounds for this suspension. Smith's suspension and that of another woman over forty were announced publicly to the entire company. A similar suspension of a male salesperson was not publicly announced. Notwithstanding this suspension, Smith continued to be a productive member of Berry's workforce.

In May 1995, Berry's Gulf Coast Division instituted a new compensation plan. Under the new "segmentation" plan, an employee's bonus now depended not on the individual employee's sales, but on the total sales of a team of employees. Brenda Smith and a number of other employees expressed concern that this new compensation package would drastically reduce their earnings. At trial, Smith contended that she was no more vocal in her complaints than any other salesperson. Berry argued, however, that Smith complained to a much greater and more public extent than any other employee. Berry also claimed to be especially concerned about Smith's complaints because of her leadership position within the office.

From 1992 onward, Smith suffered recurring medical problems with her knee and shoulder as a result of a skiing accident. At the time of the accident in 1992, Smith's doctors had recommended surgery. However, she did not have the surgery because Berry indicated that they "could not spare her." Finally, in September 1995, following the recommendations of three doctors, Smith scheduled the surgery.

On September 27, 1995, Smith informed her immediate superior, Team Leader Lester Ann Smith, that she had scheduled surgery for October 3, 1995. That same afternoon, Brenda Smith met with Lester Ann Smith, Dale Granda (Division Manager of Sales), and Tom Bruno (Operations Manager). At this meeting, Brenda Smith was accused of several specific incidents where she had complained about the new compensation plan. In response, she told Lester Ann Smith, Granda, and Bruno that some of the accusations were unfair mischaracterizations of events and others were just plain wrong. She requested that they investigate the validity of the accusations. Smith was not informed that she was being demoted.

Smith was out on medical leave from October 3, 1995 through January 15, 1996. During her absence, her Sales Leader position was advertised within the company. Also during her absence, Smith traveled extensively in a manner that Berry claimed violated company policy. Smith, however, testified that Berry's personnel department was aware of, and in some cases explicitly approved of, her travels. She also pointed out that she had notified the company of her Australian vacation six months prior to taking it.

4

On January 16, 1996, Smith returned to Berry and met with management again. At this meeting, Smith was informed that she was being demoted. The demotion entailed a substantial cut in pay and a serious decrease in responsibilities and status. She was moved off important accounts and given new, small accounts. She was told that if she complained about her demotion she would be sent on the road to the least important parishes in Berry's Gulf Coast region. In addition, in her absence, her belongings had been moved into a box and had been placed at a cubicle with no chair, no phone, and no supplies. Smith saw the failure of Berry to properly prepare her workstation--along with her demotion and the other events that had taken place since her return from medical leave--as a sign that she was being constructively discharged.

After these events occurred, Smith asked to look at her employment file. She then read five memoranda from her file that recorded complaints against her. Upon determining that Berry had conducted no investigation of these accusations, as she had requested in the September 27, 1995 meeting, she tendered her resignation from the company. She soon received a job offer from Sprint. She accepted this offer on January 24, 1996.

An important Berry memorandum relevant to Smith's age discrimination claim was introduced at trial. This memorandum (the "Luongo Memorandum") was written in 1989 by Peter Luongo while he was Vice President of Sales in Smith's region.[2] In this

_____

[2] At the time of the trial, Mr. Luongo was the Executive Vice President of the entire company.

memorandum, marked PERSONAL & CONFIDENTIAL, Luongo divided "low-end performers" into three groups, based upon their age. The memorandum categorized younger employees as "easiest . . . to deal with" and noted that older employees are a "very, difficult group" and "more difficult to terminate." The memo stated that "[e]ach of these groups will require very sensitive handling." Of the eight people named in this memorandum, four were no longer with the firm at the time of trial and one had been demoted.

Although technically Smith's position was filled by a lateral transfer, the jury could have determined that Smith was effectively replaced as a Sales Leader by Joe Pearce, a younger male. Pearce was promoted to Sales Leader while Smith was on medical leave recuperating from her surgery.

Smith sued Berry alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (1994), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e et seq. (1994), the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601 §§ et seq. (1994), and Louisiana Employment Discrimination Statutes, La. Rev. Stat. Ann. §§ 23:1006, 51:2231 (West 1992). Smith further alleged Louisiana state law claims for intentional infliction of emotional distress. She later amended her complaint and alleged claims of defamation and retaliation against Berry and Sandra Peterson, Berry's Corporate Employee Relations Manager. Before trial, the district court granted Berry's motion for summary judgment on the defamation and intentional infliction of emotional distress claims. The remaining

6

claims were then tried to a jury.

At the close of evidence, Berry moved for judgment as a matter law on all counts. The judge granted the motion as to the retaliation claim and denied it for all other claims. The jury, by special verdict, found that Berry discriminated against Smith by demoting and constructively discharging her from its employment on the basis of age in violation of the ADEA, on the basis of gender in violation of Title VII and Louisiana antidiscrimination laws, and in violation of the FMLA. The jury further found that Berry's violations of the ADEA and the FMLA were willful. The jury awarded Smith $24,000 in back pay, $76,000 in compensatory damages, and $500,000 in punitive damages. The district court then entered a judgment on the verdict.

Berry filed a post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. The district court held that there was insufficient evidence to support Smith's claims under the FMLA. The district court, however, did conclude that the evidence was sufficient to support the jury's verdict on the age and sex discrimination claims. In addition, the district court declined to disturb the back pay award of $24,000, granted an additional $24,000 under the liquidated damage provisions of the ADEA, remitted the compensatory damage award to $50,000, and remitted the punitive damage award to $100,000. The district court denied Smith's request for front pay and prejudgment interest. Thus, the overall judgment was reduced from $600,000 to $198,000.

In this appeal, Berry seeks judgment as a matter of law in its

7

favor or, alternatively, a new trial. Smith cross appeals, requesting that we reverse the district court's reduction of punitive damages,[3] the district court's ruling of no liability under the FMLA, and the district court's denial of front pay.

Berry's fundamental claim is that the evidence is insufficient to support the findings of the jury and the district court. We review the denial of a motion for judgment as a matter of law using the same standard that the district court used in ruling on the motion. Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 588 (5th Cir. 1998). We look at

> all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a matter of law] is proper.

Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled in part on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc).

Moreover, when, as here, a case has been fully tried on its merits, we do not focus on the McDonnell Douglas burden-shifting scheme. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Instead, we inquire whether the record contains sufficient evidence to support the jury's ultimate

---

[3] Smith acknowledges that the statutory maximum for punitive damages is $300,000, 42 U.S.C. § 1981a(b)(3)(D) (1994), and thus asks that we grant that amount, not the $500,000 awarded by the jury.

findings.  <u>Patterson v. P.H.P. Healthcare Corp.</u>, 90 F.3d 927, 933 (5th Cir. 1996).

## II.  Age Discrimination

Berry argues first that the evidence is insufficient to support the jury finding that Berry had discriminated against Smith because of her age and that this discrimination was willful.  When faced with the same argument, the district court disagreed, pointing to: (1) the promotion of Pearce into the position previously held by the older Smith; (2) the Luongo memorandum, which even though six years old, provided clear evidence of categorization by age; and (3) the fact that Smith and another woman were suspended soon after their fortieth birthdays for actions that Smith claimed, both then and at trial, did not justify suspension.  We agree with the district court that this evidence, while not overwhelming, is sufficient to support the jury's finding of age discrimination.

Berry also challenges the size of the award.  Berry argues that if Smith had not voluntarily left the company, she would have been terminated because she violated company policy by attempting to record the September 27, 1995 meeting and by going on unapproved travel while on medical leave.  Thus, Berry asks that Smith's award of back pay be limited because she would have been terminated anyway.

Because the evidence for Berry's argument was discovered after the alleged discriminatory actions took place, for Berry to win on this argument, Berry must satisfy the requirements set forth in

9

McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). In McKennon, the Supreme Court held that, "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." Id. at 362-63, 115 S. Ct. at 886-87. In denying Berry's post-trial motion for judgment as a matter of law, the district court stated that the jury could have reasonably found that Berry failed to satisfy its burden of proving that Smith would have been fired for her violations of company policy alone. In light of the factual disputes over travel and the fact that the antirecording policy focused on phone calls with clients, we agree with the district court's conclusion.

In addition to its finding of age discrimination, the jury determined that Berry's violation of the ADEA was willful, exposing the company to liquidated damages under the ADEA. 29 U.S.C. § 626(b) (1994). Unlike Title VII, the ADEA does not provide for punitive damages. See Dean v. American Security Ins. Co., 559 F.2d 1036, 1039 (5th Cir. 1977) (holding that punitive damages are not available under the ADEA). Instead, the ADEA provides for "liquidated damages" if the violation was willful. These liquidated damages may not exceed the back pay award. That is, a finding of willfulness can double the damages awarded to a successful ADEA plaintiff. 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b) (1994). The jury found that Berry's violation of

10

the ADEA was willful and the district court declined to upset this finding.

A violation of the ADEA is willful if the employer knew or showed reckless disregard for whether its conduct was prohibited by the ADEA.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128, 105 S. Ct. 613, 625, 83 L. Ed. 2d 523 (1985); see also Woodhouse v. Magnolia Hospital, 92 F.3d 248, 256 (5th Cir. 1996) ("liquidated damages are not recoverable only if there is evidence that the intentional violation of the ADEA was based on the employer's good-faith, albeit mistaken, belief that the statute allowed an age-based decision").  We agree with the district court that there was sufficient evidence for the jury to conclude that Berry's conduct was willful.  The Luongo Memorandum indicates that Berry categorized its employees by age.  It also supports an inference that Berry targeted older employees as prime candidates for demotion and relegation to smaller markets once they were identified as "low-end performers."  Thus, we decline to disturb the district court's award of $24,000 for back pay and $24,000 for liquidated damages under the ADEA.

III.  Sex Discrimination

Berry argues next that the evidence was insufficient to support the jury finding of sex discrimination.  Berry also challenges the various awards of back pay, compensatory damages, and punitive damages based on the sex discrimination claim.  We turn first to the sufficiency question.

We begin by observing that during the time under

11

consideration, four of the seven Sales Leaders at Berry were women. Numerous women, including Smith, enjoyed successful careers at Berry, receiving a variety of promotions and awards. Indeed, the record indicates that Berry placed a substantial number of women in both mid-level and managerial positions.

We also note that many of the Berry employees expressing concern over Smith's behavior--both prior to Smith's demotion and at trial--were women. For example, Lester Ann Smith, Brenda Smith's Team Leader, and Katherine LeMaire, the other Sales Leader on Lester Ann Smith's team,[4] both testified that Smith was behaving negatively and disrupting the workplace. Furthermore, two of the four people closely involved in the decision to demote Smith were women--Lester Ann Smith and Lynn Thomas.[5] While these observations are by no means determinative of the issue, they are significant considerations in evaluating a claim of sex discrimination. See, e.g., Travis v. Board of Regents of the University of Texas System, 122 F.3d 259, 264-65 (5th Cir. 1997) (looking to employer's general treatment and promotion of men and women).

Smith and the district court point to a number of events that they argue would permit a jury to infer discrimination on the basis

---

[4] Each of Berry's sales teams was led by a Team Leader, in this case, Lester Ann Smith. The Sales Leader worked under this Team Leader. Because of its size and importance, Lester Ann Smith's team had two Sales Leaders--Brenda Smith and Katherine Lemaire--instead of the usual one.

[5] Lynn Thomas made the actual decision to demote Brenda Smith. Lester Ann Smith, who did not have the power to make such a decision herself, supported the demotion.

of sex.  First, Smith points to the comment made to her by Dale Granda when he promoted her to Sales Leader stating that he doubted whether a woman could perform the job.  Berry points out that the remark was made six years before Smith's departure and that both she and a number of other women had been promoted to mid- and high-level positions between 1990 and 1996.  We agree with Berry that Granda's remark is a "stray remark" that cannot support an inference of sex discrimination.  See, e.g., Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir. 1995) ("[A] single comment, made several years prior to the challenged conduct, is a stray remark too remote in time to support an inference of sex discrimination in later employment actions.").

Second, Smith argues that Berry did not follow its "Corrective Performance Plan" in disciplining Smith.  Berry concedes this fact, but points out that the company's employee handbook clearly states that Berry reserves the right not to follow the Plan if it so chooses.

Relatedly, Smith argues that the manner in which she was disciplined, when contrasted with the manner in which Joe Pearce was disciplined, points to Berry's discriminatory motive.  The record indicates that while Pearce was demoted and otherwise punished for his alcohol-related misbehavior, which included throwing a colleague into a swimming pool and propositioning a colleague's wife, he was treated in a substantially different manner than Smith.  However, we agree with Berry that Pearce's conduct was not substantially similar to that of Brenda Smith.

13

Berry had legitimate nondiscriminatory reasons to treat Pearce, an employee with alcohol problems manifesting in obnoxious behavior away from the workplace, differently from an employee disrupting the workplace through her negative attitude. This different treatment does not raise an inference of sex discrimination.

Finally, Smith points to a pair of remarks made to a pregnant colleague and the public announcement of her one-day suspension and that of another women while a similar suspension of a man was kept quiet. Again, these isolated incidents that occurred well before Smith's demotion will not support an inference of sex discrimination.

In short, when we consider the isolated remarks and incidents Smith relies on to support an inference of sex discrimination against the background of Berry's favorable treatment of Smith and other women during her thirteen-year employment tenure, we conclude that the evidence is insufficient to support the verdict on the sex discrimination claim.

Our reversal of the sex discrimination claim requires us to vacate the award of punitive damages and damages for mental pain and suffering. Such damages are not available on the age discrimination claim alone. <u>Dean</u>, 559 F.2d at 1039.

### IV.  Other Issues

We have considered the remaining arguments of the parties and find that none of them have merit.

### Conclusion

In sum, we agree with the district court that sufficient

14

evidence supports the jury's finding of age discrimination.  We also find sufficient evidence to support the award of liquidated damages under the ADEA.  However, for the reasons stated above, we find the evidence insufficient to support the finding of sex discrimination.  This finding requires us to vacate the award of punitive damages and compensatory damages for mental pain and suffering.  The case is remanded to permit the district court to enter judgment consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.