# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 98-30858
Summary Calendar

JOHN D. MAYNARD; HOPE OLLIS MAYNARD,
Individually and as Administrators of the Estate of
their Minor Child, John David Maynard, II,

Plaintiffs-Appellants,

versus

DIAMOND SHAMROCK RIFINING AND MARKETING
COMPANY; MARATAHON OIL COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-1069-B)

May 24, 1999

Before POLITZ, BARKSDALE, and STEWART, Circuit Judges.

POLITZ, Circuit Judge:[*]

John and Olive Maynard appeal an adverse judgment and the district court's denial of their motion for judgment as a matter of law after an adverse jury verdict in their products liability claim against Diamond Shamrock Refining and Marketing Company and Marathon Oil Company. For the reasons assigned, we affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

On April 23, 1995 John Maynard bought gasoline from Diamond Shamrock station 375 in the Houma, Louisiana area. Immediately thereafter the engine of Maynard's van began to perform badly. Maynard, who was familiar with auto engines, decided to attempt to correct the situation. After initially tapping the fuel line to start up the engine, Maynard decided to remove the engine cover to explore the carburetor and fuel system. Unlike other vehicles, Maynard's model had a portion of its engine compartment actually in the occupant's area of the van and as a consequence, the engine, with the carburetor on top, was within arm's reach of the driver when the engine cover was removed. Believing that the fuel filter was plugged, Maynard removed the air filter cover and the air filter and rehooked the fuel line to the connection near the carburetor. After this attempt at repair the vehicle ran badly. Maynard then removed small flakes on a valve connecting the carburetor to the fuel line and then rehooked the line. He did not replace the air-filter cover or the engine cover during his several attempts to repair his vehicle. During this time, Maynard was transporting his lawnmower, a full gasoline can, and painting supplies, all located immediately behind the engine.

The final relevant incident occurred when the van engine started to "die" again. Maynard claimed that he pumped the accelerator in an effort to keep the engine going but the engine suddenly backfired, throwing fire and possibly burning gasoline on him. Evidence at trial revealed, however, that Maynard, while driving the vehicle, attempted to keep the engine running by pouring gasoline directly into

2

the carburetor. Maynard jumped from his van engulfed in flames and extinguished the fire. He was brought to the hospital and treated for burns on over 40% of his body.

Maynard subsequently learned that Diamond Shamrock had received complaints of defective gasoline from customers in the Houma-Thibodaux area during mid-April. This problem existed in nine stations, including the one from which Maynard purchased his gasoline. In response to these complaints, Diamond Shamrock identified the problem as being caused by gasoline supplied by Marathon Oil company and began buying gasoline from Citgo. Diamond Shamrock's first shipment of Citgo gasoline occurred on April 22, 1995, the day before Maynard's purchase.

Maynard and his wife then sued Diamond Shamrock and Marathon, both individually and in their capacity as administrators for their minor child. After removal, a trial was held and the jury entered a verdict in favor of the defendants, finding Marathon did not manufacture the gasoline purchased by Maynard and that Maynard's injuries were not proximately caused by a characteristic of the gasoline purchased. The district court then granted the defendant's motion for judgment as a matter of law, ruling that John Maynard was not engaged in a reasonably anticipated use of the product as required by the Louisiana Products Liability Act.[1] The Maynards timely appealed.

## ANALYSIS

---

[1]La. Rev. Stat. Ann. 9:2800.51 *et seq.*

On appeal, the Maynards challenge the district court's ruling that John Maynard's use of the gasoline was not a reasonably anticipated use. They contend that the defective gasoline caused the engine to malfunction, and that the manufacturers of gasoline reasonably should anticipate that defective gasoline may lead a person to self-help remedies.

We review *de novo* the grant of a judgment as a matter of law, applying the same standard as the district court and considering all the evidence with all reasonable inferences in the light most favorable to the non-moving party.[2] Judgment as a matter of law is proper when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict.[3]

Our review of the record persuades that the evidence is overwhelming that Maynard's use of the gasoline was not a reasonably anticipated use. Maynard was not merely, as he contends, using the fuel to propel his engine when his injuries occurred. Rather, he was pouring fuel into an uncovered engine located within the passenger compartment of his vehicle in an effort to prime the carburetor. Such a use of the product clearly is not within the appropriate range of product uses which the reasonably anticipated use standard encompasses.[4] Further, the question

---

[2]**Ensley v. Cody Resources, Inc.** 1999 WL 170142 (5th Cir. Tex).

[3]**Smith v. The Berry Co.**, 165 F.3d 390 (5th Cir. 1999) (internal citations omitted).

[4]**Kampen v. American Isuzu Motors, Inc.**, 157 F.3d 306 (5th Cir. 1998) (en banc).

4

whether Maynard's actions constitute a reasonably anticipated use is foreclosed by the jury's finding on the causation issue. In answering the interrogatories, the jury found that the defective gasoline was not the proximate cause of Maynard's injuries. The jury's decision obviously was based on the overwhelming evidence of Maynard's attempts at self-repairs, of his disregard of the risks of traveling with an exposed engine and carburetor, and of his attempts to prime the carburetor while driving a vehicle laden with gasoline, flammable equipment and supplies.

The Maynards also challenge numerous evidentiary decisions of the district court during the course of the trial proceedings. Specifically, they contend that the district court erred in refusing to allow them to call several witnesses who had purchased bad gasoline from Station 375; in excluding testimony that Marathon's gasoline may have been in a Diamond Shamrock tank when Maynard purchased gasoline; and in excluding the claim forms and other documents of approximately 280 customers who made claims against Diamond Shamrock for defective gasoline. We conclude, however, that this evidence was properly disallowed as irrelevant. The gasoline in Maynard's tank was not consumed in the fire and was tested by both the Maynards' and the defendants' experts. From this direct evidence, the jury was able to discern whether the gasoline was Marathon's defective gasoline. Because of the existence of this direct evidence, the circumstantial evidence in question held little, if any, probative value.[5]

The judgment appealed is AFFIRMED.

---

[5]Fed. R. Evid. 403; **Leefe v. Air Logistics, Inc.**, 876 F.2d 409 (5th Cir. 1989).