UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40841

_____

MARIA GUADALUPE G. GALINDO,

Plaintiff-Appellee-Cross-Appellant,

VERSUS

CITY OF ROMA POLICE DEPARTMENT; JOSE H. GARCIA, Chief of Police,

Defendants-Appellants-Cross-Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas
(M-96-CV-248)
_____

July 6, 2001

Before STEWART and PARKER, Circuit Judges, and GOLDBERG,[1] Judge

PER CURIAM:[2]

The City of Roma ("Roma") and Police Chief Jose Garcia ("Chief Garcia") appeal the

magistrate judge's order denying defendants' Renewed Motion for Judgment as a Matter of Law

and, in the alternative, their Motion for a New Trial. The defendants' motions followed a jury

_____

[1]Judge, United States Court of International Trade, sitting by designation.

[2]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

verdict that awarded damages to the plaintiff, Maria Galindo ("Galindo"), for wage discrimination and retaliation under Title VII. Galindo cross-appeals, arguing that the trial court erred in denying her damages for front and back pay on her retaliation claim and additional damages under the Equal Pay Act.

I.      Facts

Galindo started working at the Roma Police Department (the "Department") in 1985 as a dispatcher. After attending the police academy in 1988, she returned to the Department as a reserve officer. In 1991, she passed her certification exam and was reclassified as a full police officer. Galindo alleges that, throughout her tenure of employment, she suffered gender discrimination in regard to promotions, use of police equipment, and wages. She also complains that Chief Garcia sexually harassed her on numerous occasions in 1996.

Galindo filed her first complaint with the Equal Employment Opportunity Commission ("EEOC") in 1994. In July of 1996, the EEOC issued a Right to Sue letter on Galindo's 1994 charge. On September 26, 1996, Galindo complained to her supervisor, Lieutenant Francisco Garcia,[1] about Chief Garcia's alleged sexual advances. Shortly after her complaint to Lieutenant Garcia, several city employees claimed that Galindo drove her car recklessly through the fire department garage. On September 30, 1996, the City of Roma Board of Commissioners (the "Board") terminated Galindo, claiming that her reckless driving warranted dismissal. Galindo, however, was reinstated and placed on six months probation after she complained that the Board had not followed proper procedure.

---

[1] Lieutenant Garcia had the rank of sergeant at the time of Galindo's complaint. See Tr. at 8:38. Chief Garcia and Lieutenant Garcia are not related.

In March of 1997, the EEOC issued Galindo a second Right to Sue letter on a charge of discrimination she filed earlier that year. Also in the Spring of 1997, Galindo had a heated argument with Officer Delia Ramirez. In response to the argument, Lieutenant Garcia, the highest ranking officer under Chief Garcia, investigated the incident and recommended that Galindo be terminated. On June 2, 1997, the Board again terminated Galindo after 12 years of service to the Department. Officer Ramirez, employed by the Department for one year, received six months probation.

Galindo filed a suit alleging sexual harassment, gender discrimination regarding the terms and conditions of her employment, wage discrimination, and retaliation. The jury returned a verdict in favor of Galindo on her retaliation and wage discrimination claims, but denied her claims for sexual harassment and discrimination regarding the terms and conditions of her employment. The jury awarded Galindo $25,000 on her wage discrimination claim and $60,000 on her retaliation claim. The defendants filed a Renewed Motion for Judgment as a Matter of Law and, in the alternative, a Motion for New Trial. The magistrate judged denied the motions.

Defendants argue on appeal that (1) the trial court erred in denying their motions because the evidence does not support the jury's verdict as a matter of law; (2) the trial court erred in submitting two questions to the jury where only one question was required; and (3) the judge should have granted a new trial on the basis of prejudicial errors in the court's evidentiary rulings. Galindo, on cross-appeal, claims that the court should have granted front and back pay on her retaliation claim and awarded damages under the Equal Pay Act.

II.     Motion for Renewed Judgment as a Matter of Law

    We review a denial of a motion for renewed judgment as a matter of law using the same standard applied by the magistrate judge in ruling on the motion.  See Smith v. Berry Co., 165 F.3d 390, 394 (5th Cir. 1999) (citing Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 588 (5th Cir. 1998)).  We examine all the evidence on appeal, but "in the light and with all reasonable inferences most favorable to the party opposed to the motion."  Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled in part on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 336-37 (5th Cir. 1997).  Great deference is to be accorded to the jury verdict.  See Thomas v. Tex. Dep't. of Crim. Justice, 220 F.3d 389, 392 (5th Cir. 2000).  However, "if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . ., then judgment as a matter of law is appropriate."  Id.

    A.     Retaliation Claim

    Section 704(a) of Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under [Title VII]."  42 U.S.C. § 2000e-3(a) (1994).  In order to prevail on a retaliation claim the plaintiff must show "(1) that she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision."  McDaniel v. Temple Indep. Sch. Dist., 770 F.2d 1340, 1346 (5th Cir. 1985) (quoting McMillan v. Rust Coll., Inc., 710 F.2d 1112, 1116 (5th Cir. 1983)).  The defendants do not dispute that Galindo was engaged in protected activity or that an adverse employment action occurred.  They do assert, however, that there is

-4-

insufficient evidence to establish a causal connection between her protected activity and the Board's decision to terminate her employment.

Because the case has been fully tried on its merits, we do not focus on the burden-shifting scheme outlined by the Supreme Court in McDonell Douglas; rather we examine the record to determine whether sufficient evidence exists to support the jury's verdict. See Smith, 165 F.3d at 394 (citing McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973)). We consider factors such as "the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, 148-49 (2000). "The ultimate determination is whether or not retaliation for filing a charge under Title VII was a 'but for' cause of the adverse employment decision." McDaniel, 770 F.2d at 1346.

In order for Galindo to show that the retaliation was a but for cause of the adverse employment action, she must offer some evidence that the decision maker acted in retaliation. The decision maker here was the Board. Thus, the causal connection in the case at bar hinges on whether there was a reasonable inference that the Board acted in retaliation against Galindo for her claims against the Chief Garcia. See Rutherford v. Harris County, Tex., 197 F.3d 173, 181 (5th Cir. 1999) (holding that in order for a JMOL to issue there must be a "reasonable inference" that the non-discriminatory reason for failure to promote was pretext).

The evidence presented at trial was far from overwhelming. Based on the standard of review, however, we find that the jury made a reasonable inference that the Board terminated Galindo in retaliation for her claims against Chief Garcia.

The record demonstrates that Galindo offered evidence that the two terminations were in close temporal proximity to the issuance of her Right to Sue letters by the EEOC. Although close timing alone is insufficient to support a retaliation claim, see Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997), evidence of temporal proximity can establish the necessary causal connection that may be substantiated by additional evidence of discrimination.

To rebut the proximity evidence, Roma offered nondiscriminatory reasons for terminating Galindo. First, the City claimed that Galindo's reckless driving led to her first termination. Second, the City argued that Galindo's continued aggressive behavior toward other officers, specifically Officer Ramirez, led to her second termination. Because Roma offered these nondiscriminatory reasons for its employment decisions, any "presumption of discrimination drop[ped] out of the picture." See Reeves, 530 U.S. at 143 (quoting St. Mary's Honor Ctr., 509 U.S. 502, 511 (1993))(internal quotation marks omitted). Galindo then had the burden of producing sufficient evidence of retaliation. See id. at 148.

Such sufficient evidence was presented at trial. For example, the trial testimony established the close relationship between Chief Garcia and Mayor Pena. Chief Garcia and Mayor Pena had been in each other's wedding parties. They were childhood friends and Chief Garcia considered himself to be very close to Mayor Pena. See Tr. at 6:238. Additionally, Chief Garcia had boasted at one point that Mayor Pena could not fire him because he knew information about the Mayor which he would report to the FBI should the Mayor attempt to do so. See Tr. 7:101. This evidence raises the circumstantial possibility that Mayor Pena allowed his relationship with Garcia to influence his decision-making function. Although this evidence, alone, is not especially strong, together with additional evidence, it is sufficient to support the jury's reasonable inference

-6-

that the Board retaliated against Galindo.  See Hass v. ADVO Sys., 168 F.3d 732, 733-34 (5th Cir. 1999) .

Moreover, although there is no direct evidence that Mayor Pena controlled the decision-making function of the Board, there is some circumstantial evidence that he may have influenced the other Commissioners.  First the jury may have inferred that Mayor Pena, Roma's executive office holder, had heightened power on the Board.  Second, Mayor Pena authored the termination letter.  Plaintiff's Exhibit 12(c).  Mayor Pena's authorship of the letter may have indicated to the jury that he was substantially involved in the Board's decision.  We find these inferences to be reasonable.

Galindo also points to evidence that co-workers were treated differently for similar behavior.  First, Galindo presented evidence that another officer was not terminated or suspended for driving recklessly, while she was terminated for the same offense.  See Tr. at 8:203-204.  Second, Galindo presented evidence of the disparate punishment she received in comparison to Officer Ramirez subsequent to the 1997 altercation between the co-workers.  See Tr. at 6:157-58.  Such comparative evidence is competent for JMOL analysis if the employees' actions are in fact similar.  See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 405 (5th Cir. 1999) (holding that to be competent evidence comparisons to co-workers must be to co-workers that are similarly situated).   Although the two sets of incidences are not identical, they are similar enough that a jury could have reasonably considered them evidence of disparate treatment.  Evidence of disparate treatment supports a jury's verdict regarding retaliation.

Lastly, the investigations of the events that led to Galindo's termination are subject to question.  Chief Garcia, the man charged with sexual harassment, investigated the reckless driving

incident. Chief Garcia never asked Galindo to present her side of the story, and Galindo never read the statements against her. See Tr. at 6:128; 6:138. One of the women who complained about the reckless driving incident testified that Chief Garcia told her to write a statement against Galindo. See Tr. at 7:192. Prior to her second termination, Galindo was never asked about the April 1997 precipitating dispute, yet Officer Ramirez was allowed to present her statement. See Tr. at 8:49-50. Lieutenant Garcia recommended that Galindo be terminated after twelve years of service without even asking her side of the story. See id. If the jury believed this testimony, they could have reasonably inferred that Chief Garcia harbored animus against Galindo for making the EEOC complaints and allowed this animus to taint his treatment of Galindo. As stated earlier, the retaliation evidence is far from overwhelming. We, however, do find that sufficient evidence was presented at trial to support the jury's verdict regarding retaliation.

B.      Wage Discrimination Claim

The jury awarded Galindo $25,000 on her wage discrimination claim. Defendants contend that there is insufficient evidence to support the jury's verdict. "To establish a prima facie case of wage discrimination respecting compensation a plaintiff must prove (1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984); see also Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981); Plemer v. Parsons-Gilbane, Inc., 713 F.2 1127, 1137 (5th Cir. 1983). If the plaintiff cannot establish that she performed comparable work, "we hesitate to mandate a finding of intentional discrimination on the basis of pay differential alone . . . ." Merrill v. S. Methodist Univ., 806 F.2d

600, 607 (5th Cir. 1986). Therefore, Galindo must present some evidence that she performed substantially similar work to that of the male employees at the Police Department.

Galindo's main complaint was that she was paid less than officers who had worked for the Police Department approximately the same amount of time, and that she was paid the same as officers who had worked for a lesser term. While seniority is one basis for determining an employee's salary, "[d]ifferent job levels, different skill levels, [and] previous training and experience: all may account for unequal salaries in an environment free from discrimination." Plemer, 713 F.2d at 1138 (quoting Pouncy v. Prudential Ins. Co., 668 F.2d 795, 803 (5th Cir. 1982)).

Viewing the evidence in the light most favorable to the verdict, we find that the evidence is insufficient to support the jury's decision. Roma based police officer wages on experience and position. See Tr. at 7:163. All of the men who made more money than Galindo had either different job levels or different degrees of training and experience. See Tr. at 6:189, 7:140. For example, Galindo asserts that Lieutenant Garcia had been employed at the Police Department approximately the same amount of time, yet made almost $1,000 more a month. See Tr. at 6:169. Lieutenant Garcia, however, was a licensed police officer six years before Galindo and served as sergeant and lieutenant on the police force. Furthermore, Lieutenant Garcia has certifications as a telecommunicator, a certification for specialized performance driving, and served as an instructor for the Texas Commission on Law Enforcement Officers Standards and Education. See Tr. at 8:23. In contrast, Galindo began work at the Police Department as a dispatcher and later became a police officer in 1991. She did not have the experience and training that Lieutenant Garcia possessed. See Tr. at 7:164. Similarly, Galindo complains that she made less than Officer Jorge

Gonzalez. Gonzalez, however, had twenty-two years of law enforcement experience before coming to the Roma Police Department. Galindo had no previous experience. Galindo also compares her salary with the wages of officers paid by state grants. The officers paid by state grants worked in specialized fields, and Roma had no control over their wages. See Tr. at 8:8.

Galindo presented no evidence that she performed work substantially similar to the work of the other officers that were paid more. The record demonstrates that the other officers who earned more money had higher positions and more experience. Evidence of seniority alone is not sufficient to support a jury verdict for wage discrimination when the record demonstrates that other employees held different positions and possessed more training and experience. See Plemer, 713 F.2d at 1138. Therefore, we reverse the magistrate judge's order denying defendants' Motion for Judgment as a Matter of Law, and find that Galindo is not entitled to the separate $25,000 damage award for wage discrimination assessed by the jury.

III.   Jury Instruction Claim

The defendants claim that the magistrate judge erred in separating one jury question into two. Defendants argue that the wage discrimination issue addressed in Question No. 2 should have been included in Question No. 1, which pertained to discrimination in the terms and conditions of Galindo's employment contract. Because the evidence was insufficient to support the jury's verdict concerning the wage discrimination claim and because the jury denied Galindo relief for any other discrimination, defendants' argument is moot.[3]

IV.   Motion for New Trial

---

[3] Defendants also contend that the instructions submitted to the jury were incorrect statements of the law. We will not, however, address this claim because defendants failed to adequately brief the issue. See Yohey v. Collins, 985 F.2d 222, 224 (5th Cir. 1993).

The defendants also argue that the trial court erred in denying their Motion for a New Trial. The defendants claim that evidence should have been excluded under (1) the 180-day statute of limitations period applicable in Title VII cases; (2) the hearsay rule; (3) Rule 608 of the Federal Rules of Evidence governing character testimony; and (4) Rule 401 of the Federal Rules of Evidence concerning relevancy. We affirm the trial court's decision to deny the defendants' Motion for a New Trial.

A trial court's denial of a motion for new trial is reviewed on appeal under an abuse of discretion standard. See Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1051 (5th Cir. 1998). "[O]ur review is more narrow when a new trial is denied than when one is granted." Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998). Furthermore, a trial court's discretion to admit or exclude evidence is broad and is also reviewed for abuse of discretion. See EEOC v. Manville Sales Corp., 27 F.3d 1089, 1092-93 (5th Cir. 1994) (quoting Davidson v. Oil Country Supply Co. v. Klockner, Inc., 908 F.2d 1238, 1245 (5th Cir. 1990); Johnson v. Ford Motor Co., 988 F.2d 573, 578 (5th Cir. 1993)). Even if the trial court erroneously allows testimony to reach the jury, "courts of appeals should not reverse . . . unless a party's 'substantial right' is affected." Munn v. Algee, 924 F.2d 568, 573 (5th Cir. 1991). In other words, "an error is harmless if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a slight effect on its verdict." See id. (quoting Pregeant v. Pan Am. World Airways, Inc., 762 F.2d 1245, 1249 (5th Cir. 1985)).

A.      Statute of Limitations

The defendants contend that the trial court erred by admitting evidence outside the 180-day statute of limitations, and that the evidence influenced the jury's award of damages. Title VII

requires plaintiffs to raise a claim for discrimination within 180 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-(5)(e)(1) (1994). Defendants, however, do not argue that Galindo's causes of action are time-barred under the statute of limitations; rather, they argue that some instances of discrimination admitted at trial occurred outside the 180-day limit. The defendants assert that this evidence had a prejudicial effect on the jury's damage award and should have been excluded under the 180-day rule.

Section 2000e-5(e)(1) works as a statute of limitations -- not as a rule of evidence. See e.g., Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999) (finding that the time limit under 2000e-5(e)(1) operates as a statute of limitations for filing charges with the EEOC). The one exception we generally make to this time limitation is for continuing violations. The continuing violations exception applies to situations wherein "the unlawful employment practice manifests itself over a period of time." Estate of Martineau v. Arco Chem.l Co., 203 F.3d 904, 913 (5th Cir. 2000). In order for the exception to apply, "the plaintiff is then required to show a series of acts, one of which falls within the [] limitations period." Id.

It is undisputed that some of the admitted testimonial evidence involved acts that occurred within the 180 day period. Thus, for us the question is whether admitted evidence of acts occurring outside the time limit constitute a continuing violation or background evidence admissible under Fed. R. Evid. 401 and 403. See Oswald v. Laroche Chem., Inc., 894 F.Supp. 998, 1001 (E.D. La. 1995) ("Because any evidence of such events are time-barred, they should be excluded as irrelevant, or, alternatively, as confusing under Fed. R. Evid. 403."). We find that the trial court did not abuse its discretion in admitting the evidence of Galindo's removal in 1993, the lewd drawing in 1993, and Chief Garcia's kiss in 1991. Under Rule 401 this evidence was

-12-

relevant because it established a pattern of practice consistent with sexual discrimination and retaliation. The existence of these facts, as continuing violations, made it more probable than not that Galindo was discriminated against and retaliated against during the 180-day period. The trial court properly declined to exclude this evidence under Rule 403 because, although it may have been prejudicial, the legitimacy of the continuing violation theory made the evidence highly probative. We see no abuse of discretion in this decision.

B.      Other Evidentiary Claims

The defendants also argue that the trial court abused its discretion by allowing testimony in violation of the Federal Rules of Evidence concerning hearsay, character evidence, and relevancy. We first turn to the defendants' hearsay argument. Defendants' hearsay objections pertained to several officers' testimony about complaints of harassment they received from female employees. The officers testified that they heard complaints and the general basis for the allegations. This was not hearsay. The point of eliciting this testimony was to show that other women complained and Roma's reaction to their complaints. The testimony was not offered to prove the truth of the assertion that the other women were actually harassed. The magistrate judge properly allowed the evidence.

The defendants further allege that the trial judge admitted improper character evidence in violation of Rules 608 and 609. The defendants react to testimony concerning the general behavior of police officers in the Roma Police Department. The evidence was offered either to demonstrate that other officers behaved worse than Galindo or to rebut specific assertions. See Tr. at 7:220-23; Tr. at 8:14, 151-52. This evidence was not offered as character evidence under Rules 608 and 609 and thus is not excludable under those rules. Although the defendants

-13-

specified one situation that involved improper character evidence under Rule 609, the trial court properly excluded the testimony. <u>See</u> Tr. at 8:71-72.

Finally, the defendants claim that the magistrate judge admitted irrelevant testimony at trial which prejudiced the jury. In their brief, the defendants cited two specific instances of the introduction of allegedly irrelevant evidence: (1) questions asked of "Sgt. Montalvo regarding his knowledge of sexual harassment investigations, implying a police officer should know how to handle a civil employment claim"; and (2) questions asked of "Lt. Garcia which implied a violation of the Americans with Disabilities Act." <u>See</u> Pls.' Br. at 44. Inasmuch as "[t]he standard for relevance is a liberal one," <u>Manville Sales Corp.</u>, 27 F.3d at 1093, the trial court did not abuse its discretion in admitting this evidence. Although, the subject testimony of Sergeant Montalvo had limited relevance, it was relevant as general background information regarding the environment and awareness of the Roma Police Department. The subject testimony of Lieutenant Garcia, although of limited import, was relevant to Lieutenant Garcia's relationship with Galindo. It was important for the jury to understand this relationship if it was to evaluate Lieutenant Garcia's investigation of Galindo. Further, the relevance of either instance outweighs any potential prejudice.

V.      Cross-Appellant's Damage Award Claims

Galindo argues that the magistrate judge erred in denying back and front pay damages and liquidated damages under the Equal Pay Act. In this circumstance, front and back pay are equitable remedies under 42 U.S.C. 2000e-5(g). <u>See</u> 42 U.S.C. 1981(b)(2) (1994). The trial court has discretion to determine whether an award of front and back pay is an appropriate

remedy for intentional discrimination.  See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423 n.19 (5th Cir. 1998).

We review the magistrate judge's denial of front and back pay under an abuse of discretion standard.  See Sellers v. Delgado Cmty. Coll., 839 F.2d 1132, 1136 (5th Cir. 1988).  However, "'in the absence of special circumstances, back pay should always be awarded when a Title VII violation is found,' and the instances wherein such an award is not granted are exceedingly rare."  Id. (quoting Rasimas v. Mich. Dep't. of Mental Health, 714 F.2d 614, 626 (6th Cir. 1983)).  The trial court's discretion "must be exercised in light of the objectives of Title VII."  Floca v. Homecare Health Serv., Inc., 845 F.2d 108, 111 (5th Cir. 1988) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)).  "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination."  Id.

Although Galindo argued to the trial court in her Motion for Determination of Relief and for Entry of Judgment that she was entitled to front and back pay under 1981a and 2000e-5(g), the magistrate judge never addressed the issue.  See Record at 1:221; 2:347-52.  The jury concluded that the defendants discharged Galindo in retaliation for her protected activity.  See Record at 2:215.  Galindo did not work for over two months as a result of her termination.  Given the Supreme Court's holding in Albemarle that trial judges should address equitable remedies such as front and back pay under 2000e-5(g), the magistrate judge should have considered Galindo's request.  See Albemarle, 422 U.S. at 421.  We remand the issue of front and back pay to the trial court for further proceedings.

Galindo also claims that the magistrate judge erred in denying her liquidated damages under the Equal Pay Act. The evidence submitted at trial, however, was insufficient to support her claim for wage discrimination under Title VII and, therefore, is also insufficient to support a claim under the Equal Pay Act.[4] Thus, Galindo is not entitled to damages on her wage discrimination claim under either Title VII or the Equal Pay Act.

VI.    Conclusion

Galindo presented sufficient evidence to support the jury's verdict on her retaliation claim. There is, however, insufficient evidence in the record to support the jury's verdict as to wage discrimination. Therefore, we affirm in part and reverse in part the magistrates judge's order denying defendants' Renewed Motion for Judgment as a Matter of Law. We affirm the trial court on the defendants' remaining points of error. Finally, we remand to the trial court the issue of equitable relief under 42 U.S.C. § 1981a and 42 U.S.C. § 2000e-5(g).

AFFIRMED IN PART; REVERSED IN PART and REMANDED.

---

[4] To prevail on a claim under the Equal Pay Act, a plaintiff must show that her job requires "equal skill, effort and responsibility, and which are performed under similar working conditions . . . ." as the work of the male employees. 29 U.S.C. § 206(d) (1994). A wage discrimination claim under Title VII requires a plaintiff to show that her work was substantially similar to that of the male employees. See Plemer, 713 F.2d at 1131-34.